NOT DESIGNATED FOR PUBLICATION

No. 128,282

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANNA A. KATING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Dylan J. Pryor*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: After a jury trial, Shanna A. Kating was convicted for criminal threat related to an incident involving attendees of a neighboring church. Kating appeals her conviction alleging two trial errors. First, she contends that there was insufficient evidence to support her conviction, and second, that the district court erred by not giving a unanimity jury instruction. While there was some contradictory evidence at trial, this court does not reweigh the evidence. Although not overwhelming, there was sufficient evidence upon which the jury could rely to find Kating guilty of committing a criminal threat. Additionally, there is no evidence that Kating's statements constituted multiple

1

criminal acts, and the district court's failure to give an unrequested unanimity instruction is not reversible error.

Affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Kating's charges stem from an incident where she was outside her residence and got into a verbal altercation with people at the neighboring church in August 2023. According to a church member present that day, Doug (a pseudonym), Kating was "yelling and screaming profanities, stating that our pastor and our church members are nothing but a bunch of rapists and molesters." Doug said he tried to calm Kating down and figure out what was going on—but Kating "proceeded to be belligerent and continued yelling and cussing at" him. He testified that he heard Kating say that "she has a gun inside the house and that she was going to shoot us and the church." On cross-examination, Doug testified that he was not scared and did not feel threatened by Kating, but that he was concerned about the other people at the church.

A second church member called 911—together, she and Doug spoke to the dispatcher and a recording of that 911 call was played for the jury. During the call, the female caller describes a person and says, "she just threatened to shoot up our church, she said she's going inside to get her gun." The caller tells the dispatcher that the woman was initially in her backyard but then went inside her house. Doug then got on the phone and described the woman, identified the woman's house, and said the woman was drinking. Doug denied seeing the woman with a firearm and later told the dispatcher that the woman came back outside and was "walking onto the church property, she's throwing stuff again at us." Doug can then be heard yelling, "ma'am, I suggest you stay over there."

2

The church member who dialed 911 testified next about Kating throwing things over the fence and yelling profanities. She testified that she also recorded events on her phone. She said Kating "threatened to shoot up our church." The State played the female church member's cell phone video for the jury, which consisted of 35 seconds of video showing the backyard of the house with the chain link fence between Kating's residence and the church property. In the video, a woman can be heard yelling things like, "better watch out," "y'all about to die by the police or him," "I got a gun, and I got a loaded, concealed and carry," and "[inaudible] shoot through this window." The woman can also be seen throwing something toward the fence.

After the videos were published, the female church member testified that Kating referenced a gun and said it was loaded, but she did not testify that Kating made any specific threats. A third church member testified that as soon as she walked out of the church, she "immediately heard cussing. The first thing I heard was 'Fuck you, bitch,' and I looked over and I had objects being thrown our direction." She said Kating continued "yelling slander, cussing at us" and that she began threatening them by saying they "would die by police or by him" and that "she had a conceal and carry and that we were going to be shot." A fourth church member gave similar testimony, but he said Kating brought up her firearm but did not say she would use it. On cross-examination, this member testified Kating "said that she had a weapon, she had a concealed carry, and that we were going to die by police."

A patrol officer from the Wichita Police Department testified about his involvement on the scene and his later interview with Kating. The officer testified that Kating had been cleaning her backyard and told him "she was upset, but then couldn't remember why she was upset for sure. She made a comment about somebody from the church." Kating told the officer she may have thrown something over the fence while cleaning. When he asked her about the threats, "[s]he said that they may have been misheard." Kating also denied having a gun. She did not tell officers about an incident

3

involving a male neighbor who allegedly threatened her with a gun—which she later contends occurred.

As part of her defense, Kating testified about an encounter she said occurred with a man earlier that day that colored her actions. She said that "a guy that came out and—a gun and he pointed it at me and told me to get the fuck away because it was on his property." She said that after this encounter, she started cleaning her yard and accidentally threw a dog toy over the fence. Kating said she was approached by the church members, and she told them they "could keep the dog toy, they want it, that's fine, I don't need it back, please leave me alone." She described the people from the church as "not so nice" and said they were yelling profanities at her. Kating admitted she was scared by the man who was supposedly outside threatening her but that instead of going inside, she stayed outside in her yard.

Kating testified that she did not own and has never owned a gun, and that she did not have a concealed carry license. She said during her interaction with the church members, she had been trying to tell them what happened to her earlier and that it could happen to them. According to Kating, she was trying to help and warn the people at the church. She maintained that Doug had told her he had a concealed carry weapon. She also testified that she was undergoing medical issues at the time, one of which could cause confusion and "fuzziness of thought," and that medication she was presently taking helped those symptoms.

The jury convicted Kating of criminal threat, and the court sentenced her to seven months of prison but suspended the prison sentence and ordered her to serve six months of probation.

DISCUSSION

Kating appeals by first arguing there was insufficient evidence to support a conviction for criminal threat and, second, that the district court erred by failing to give a unanimity jury instruction.

## I. SUFFICIENT EVIDENCE SUPPORTED THE CONVICTION

Kating contends there was not evidence that she threatened the churchgoers and that she was merely warning them about the man who threatened her. Thus, Kating argues her comments did not amount to a threat, and she seeks to raise an as-applied overbreadth challenge to K.S.A. 21-5415(a)(1) for the first time on appeal.

While appellate challenges to the sufficiency of the evidence are not limited by preservation requirements, generally other challenges, including constitutional ones, must first be raised before the district court before they can be considered on appeal. See *State v. Gutierrez-Fuentes*, 315 Kan. 341, 348, 508 P.3d 378 (2022) (sufficiency challenges "not constrained by a preservation requirement"); *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022) (constitutional challenges require preservation). Appellate courts recognize three exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Even if this court finds an exception applies, its "review is prudential," meaning it "may still decline to review the question." *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024).

Kating argues this court can consider her as-applied constitutional challenge to the criminal threat statute under the first two exceptions, the claim involves only a question of law, and its consideration is necessary to serve the ends of justice. Kansas appellate courts distinguish as-applied constitutional challenges from facial constitutional challenges because the former type "'necessarily requires findings of fact.'" *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 4, 446 P.3d 1103 (2019). This is a key concept because, unlike district courts, appellate courts *review* factual findings made by the district court—they do not make factual findings. *State v. Hutto*, 313 Kan. 741, 746, 490 P.3d 43 (2021). Thus, as-applied challenges are typically not reviewed when raised for the first time on appeal because of the lack of factual findings. See *State v. Meredith*, 306 Kan. 906, 913, 399 P.3d 859 (2017) (declining to review defendant's as-applied challenge given a lack of a "robust [factual] record"); *State v. Sanders*, 65 Kan. App. 2d 236, 243, 563 P.3d 234 (listing other panels that declined to review as-applied challenges for the first time on appeal), *rev. denied* 320 Kan. 867 (2025). This court will not address the merits of Kating's as-applied constitutional challenge for the first time on appeal but considers her sufficiency argument.

When a defendant alleges there was insufficient evidence to sustain a conviction, an appellate court reviews the evidence in the most favorable light "to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *Mendez*, 319 Kan. at 723. "It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

Relevant here, Kating's conviction for criminal threat required the jury to find that she communicated a threat to "[c]ommit violence . . . with intent to place another in fear . . . ." K.S.A. 21-5415(a)(1). "A person acts 'intentionally,' or 'with intent,' . . . when it is such person's conscious objective or desire to engage in the conduct or cause the result."

K.S.A. 21-5202(h). A criminal conviction requires evidence to support each element of the crime. *State v. Hilyard*, 316 Kan. 326, 330, 515 P.3d 267 (2022).

The evidence included testimony from the churchgoer Doug who testified that Kating said, "she has a gun inside the house and that she was going to shoot us and the church." Doug stated that he heard Kating say she had a gun. Additionally, the jury saw the cell phone video from another churchgoer where a woman can be heard saying "y'all about to die by the police or him," and "I got a gun, and I got a loaded, concealed and carry."

Kating argues her comments were warnings about the other neighbor who she had interacted with that morning and police and that "she never conveyed to the people surrounding her that she was going to commit an act of unlawful violence." Kating focuses on her statement from the cell phone recording where she said, "'Y'all about to die by police or by him. One of the other. Got a gun and I got a loaded conceal and carry.'" Kating seeks to have this court analyze the sufficiency of the evidence based solely on her version of the events, and this portion of the video, rather than in the full context of the events of that morning.

While there was some evidence that Kating may not have intended to make a criminal threat, there was contradictory evidence that she made a threat. Doug testified that Kating said multiple times that "she has a gun inside the house and that she was going to shoot us and the church." There was also the 911 call where a different churchgoer said that Kating "just threatened to shoot up our church, she said she's going inside to get her gun." At trial, that same witness testified that Kating "threatened to shoot up our church." While no other witnesses testified to hearing Kating threaten to shoot anyone, no witnesses testified in support of Kating's version. No one saw or heard the unidentified neighbor threaten Kating; no witnesses testified that they understood Kating to be warning them about that man; and, when police arrived, Kating did not report being

7

threatened by the unidentified man. While Kating's testimony contradicted the other witnesses, it was the jury's duty to analyze the evidence and make credibility determinations about which version of events to believe occurred. The jury did just that—and clearly did not find Kating more credible than the other witnesses.

All the evidence taken together was sufficient for the jury to conclude that Kating communicated a threat of violence with intent to place another in fear, which is enough. There was testimony that Kating repeatedly said she had a gun, said she would shoot at the church, and made comments about the churchgoers being killed. While some other evidence undermines the evidence that Kating intended to communicate a threat, sufficient evidence to support a conviction "need not rise to such a degree of certainty that it excludes any and every other reasonable conclusion." *Hilyard*, 316 Kan. at 331. Viewing the evidence in a most favorable light to the State, a rational fact-finder could have found Kating guilty of criminal threat beyond a reasonable doubt.

## II. NO ERROR IN FAILING TO GIVE A UNANIMITY INSTRUCTION

Kating also contends that the district court erred by failing to give a unanimity instruction because there were multiple witnesses who mentioned some type of threat and any of the threats could have been the basis for her conviction. Kating admits that she did not request a unanimity instruction or otherwise raise this issue to the district court to allow it to resolve the issue. Nevertheless, she maintains this jury instruction issue need not be preserved for appellate review.

When analyzing trial errors related to jury instructions, this court employs a three-step process, first determining whether the issue is proper for review—that is, whether the error was preserved for appeal. In the second step, this court determines whether an error occurred. Finally, at the third step, this court assesses whether the error requires reversal. *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025). If the court

determines at step one that the issue was not properly preserved, then, at the third step, this court reviews the unpreserved jury instruction error under the heightened clear error standard. See K.S.A. 22-3414(3); *State v. Dobbs*, 297 Kan. 1225, 1237, 308 P.3d 1258 (2013). Clear error is a high standard that permits reversal only when the appellate court is "firmly convinced the jury would have reached a different verdict absent the error." 297 Kan. at 1237.

Therefore, while this court can review Kating's unpreserved jury instruction issue, the error is reviewed for a clear error rather than harmlessness. See *Davis*, 306 Kan. at 418 (a preserved instruction issue is reviewed under the harmless error standard).

When a party maintains the district court should have provided a unanimity instruction, the appellate court must first decide whether it is "presented with a multiple acts case" because the answer is determinative. *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007). Whether multiple acts were involved is a question of law subject to unlimited review by this court. *State v. King*, 297 Kan. 955, 981, 305 P.3d 641 (2013). A multiple acts case occurs when "several acts are alleged and any one of them could constitute the crime charged." *State v. Kesselring*, 279 Kan. 671, Syl. ¶ 5, 112 P.3d 175 (2005).

However, when the evidence demonstrates that the criminal threats constitute a continuous incident that is not factually separated, no unanimity instruction is required. See *State v. Bischoff*, 281 Kan. 195, 201, 131 P.3d 531 (2006). Courts employ a four-factor analysis to determine whether a case involves multiple, separate criminal acts requiring a unanimity instruction or merely continuous criminal conduct:

> "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular

9

whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" *King*, 297 Kan. at 980-81.

Kating contends there are allegations that she made multiple threats, including language threatening to shoot up the church initially and then a later statement about having a loaded gun, which could both constitute a criminal threat. Kating also contends that the neighbor coming out in his yard was an intervening event between the statements. For purposes of this review, the court assumes there was evidence that Kating made multiple threatening statements.

So, this court must determine whether those statements constitute multiple acts requiring a unanimity jury instruction. The first inquiry is whether the alleged multiple threats were made close in time and location—which they were. The threats all occurred on the same day, at the same time while Kating was in her backyard engaging with the neighboring churchgoers. The 911 call includes a report of both statements. This timeline supports a finding that these threats were not multiple, separate acts but one continuous or unitary course of conduct. See *State v. Foster*, 290 Kan. 696, 714, 233 P.3d 265 (2010) (finding a single act when defendant threatened victim multiple times during more than an hour); *Bischoff*, 281 Kan. at 202 (a longer period can constitute a single act); *State v. Hilson*, 28 Kan. App. 2d 740, 743, 20 P.3d 94 (2001) (continuous incident involving several actions occurring over a period of 30 minutes).

The next factor is whether there is a causal relationship between Kating's multiple threats or whether an intervening event broke any causal chain. Kating argues the male neighbor coming outside presented an intervening factor, but his appearance in his yard does not present facts supporting an intervening event that created or changed the circumstances that were already occurring. Kating was yelling profanities and making threatening statements to the church members both before and after the neighbor was in the yard—and her statements after the neighbor appeared were not related to the neighbor

10

or his conduct. The neighbor's presence did not alter Kating's conduct, nor was the second alleged threat made because of the neighbor's presence or conduct. See *Bischoff*, 281 Kan. at 203-04 (not multiple acts when the criminal conduct continued and escalated without intervening event); *Hilson*, 28 Kan. App. 2d at 743 (not multiple acts even though there were two threats when they were made "to achieve the same objective" during the same continuous situation).

Finally, there is no evidence of a fresh impulse motivating Kating's statements, which is one of the factors in determining whether unitary conduct occurred. See *State v. Hirsch*, 310 Kan. 321, 339-40, 446 P.3d 472 (2019) (explaining unitary criminal conduct in the context of a double jeopardy analysis). In *Hirsh*, the Kansas Supreme Court found it was a "close call" as to whether a husband's threats made seconds apart were part of the same course of conduct when the husband threatened his wife's life and then, in response to the wife's pleas regarding their children, threatened the lives of the children. 310 Kan. at 340. While the court theorized that the husband's threat regarding the children could have been prompted by a fresh impulse, it ultimately concluded the threats were part of unitary conduct. 310 Kan. at 340. However, here, there is no evidence of a fresh impulse motivating the second threat. Thus, Kating's statements were not distinct multiple acts, but even assuming the district court erred by failing to provide the jury with a unanimity instruction, there is no clear error.

There is simply no evidence that firmly convinces this court that the jury would have reached a different verdict if presented with a unanimity instruction. Kating argues the State failed to elect a specific threat, which prohibited her from presenting a unifying defense because she only defended the statements about the concealed weapon, not any threats to shoot up the church. The Kansas Supreme Court has clarified that "the defendant's defense strategy is merely an important and compelling factor in firmly convincing the reviewing court that the jury would have reached a different verdict had the instruction error not occurred." *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281

11

(2013). That is, the defendant's defensive strategy is just part of the reviewing court's analysis into whether the failure to give the instruction was clear error.

Kating's alleged threats related to having a loaded gun and shooting at the church or its members all occurred at the same time in the same place, within mere minutes, and were part of the same causal relationship. Even accepting Kating's argument that she only defended the "y'all about to die by the police or him . . . I got a gun, and I got a loaded, concealed and carry" statement by arguing it was a warning, it is unclear how her defense would have changed if a unanimity instruction would have been included related to the allegations that she threatened to shoot the church and its congregants. The jury did not believe Kating's story that she was merely warning the church members about a dangerous neighbor, and they did not find Kating's testimony credible that she never made any threats. This court is not "firmly convinced the jury would have reached a different verdict absent the error," and thus Kating is not entitled to relief related to the lack of unanimity instruction. *Dobbs*, 297 Kan. at 1237.

CONCLUSION

For whatever reason, Kating was agitated and engaged in conduct with neighboring churchgoers that included yelling profanity, throwing things, making threatening comments, and yelling about a loaded gun and shooting. A jury found her guilty of criminal threat related to the incident. Contrary to Kating's arguments on appeal, sufficient evidence supported her conviction, and the district court did not err in failing to give an unrequested unanimity jury instruction.

Affirmed.